IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JPAULJONES, L.P.**,<br>　　　　Plaintiff,<br><br>　　v.<br><br>**ZURICH GENERAL INSURANCE COMPANY (CHINA) LIMITED**,<br><br>　　　　Defendant. | Case No. 3:20-cv-01767<br><br>**OPINION AND ORDER** |

Brian D. Chenoweth & David B. Hutchinson, Chenoweth Law Group, PC, 510 SW Fifth Avenue, Portland, Oregon 97204. Attorneys for Plaintiff.

Jennifer Michelle Lee and William J. Cremer, Cremer Spina Shaughnessy Jansen & Siegert, LLC, 1 N Franklin St 10th Floor, Chicago, IL 60606; Stephen P. Rickles, The Rickles Law Firm, PC, P.O. Box 10065, Portland, Oregon 97296. Attorneys for Defendant.

**IMMERGUT, District Judge.**

　　　　This matter comes before the Court on Defendant's Motion to Dismiss. ECF 6. Defendant asserted in its Motion three independent grounds for dismissal: lack of personal jurisdiction under Rule 12(b)(2), improper venue due to arbitration and venue provisions under Rule 12(b)(3), and improper service of process under Federal Rule of Civil Procedure 12(b)(5). ECF 6 at 7. Because this Court finds that the venue and arbitration provisions warrant dismissal pursuant to a *forum non conveniens* analysis, this Court does not address the other grounds. *Cf.*

PAGE 1 – OPINION AND ORDER

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007) ("[W]here subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course.").

## BACKGROUND

Plaintiff JPaulJones, L.P. is a limited partnership incorporated in Texas with its principal place of business in Austin, Texas. ECF 1 at ¶ 4. The members of this limited partnership are citizens of Texas and Florida. *Id*. at ¶ 5. Defendant Zurich General Insurance Company (China) Limited is a foreign entity existing and organized under the laws of The People's Republic of China, with its principal place of business in Shanghai, China. *Id*. at ¶ 3.

Plaintiff is a product designer that creates multiple functional products, including the EyeVac Pro touchless vacuum (the "EyeVac"). ECF 1-1 at ¶ 4. In or around 2007, Plaintiff hired TEK Electrical Co., Ltd, and Ecovacs Robotics, Inc. ("Ecovacs") to manufacture the EyeVac at Ecovacs's factory in China. *Id*. As part of this agreement, Ecovacs agreed to include JPJ as an additional insured under its factory liability insurance policy with Defendant, Policy Number CGO0010320BG (the "ZC Policy"). *Id*.

The ZC Policy has a forum selection provision[1] that provides as follows:

10. Contractual Dispute Resolution:

---

[1] The parties refer to clauses 10(1) and 10(2) as the arbitration and venue provisions. *See* ECF 6 at 33; ECF 23 at 9-11; ECF 27 at 6-9. The Ninth Circuit generally evaluates provisions specifying venue, arbitration, or another forum as "forum selection clauses" and applies the forum selection clause analysis without distinction. *See, e.g.*, *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 763-64 (9th Cir. 1989); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513-14 & n.4 (9th Cir. 1988); *Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 837 (9th Cir. 2010); *but see In re Orange, S.A.*, 818 F.3d 956, 962-64 (9th Cir. 2016) (noting that courts resolve doubts regarding the scope of arbitration clauses, but not forum selection clauses, in favor of arbitration; noting that district court's reasoning aligned with precedent on both types of clauses).

PAGE 2 – OPINION AND ORDER

> Contractual disputes shall be resolved in one of the following methods determined by the parties in the contract:
>
> (1) Any disputes arising from performance of this Contract shall be solved by negotiation between the parties, failing which the disputes shall be submitted to Shanghai arbitration committee for arbitration;
>
> (2) Any disputes arising from performance of this Contract shall solved by negotiation between the parties, failing which the parties may bring up litigation proceedings in people's court.

ECF 1-1 at 28.

Plaintiff alleges that the ZC Policy is an occurrence policy that provides defense and indemnity coverage for property damage occurring from 2007 through September 23, 2019. *Id*. at ¶ 5. An occurrence-based policy, as opposed to a claims-based policy, triggers coverage based on when the property damage occurred. *Id*. at ¶ 13. Plaintiff states that Defendant has denied coverage on some claims on the ground that when it renewed Ecovacs's policy for 2019, Defendant inserted a "sunset clause" which excluded any claims arising from the products Ecovacs sold to Plaintiff which were not reported to Defendant by September 23, 2019. *Id*. at ¶ 12. Plaintiff contends that although Plaintiff was a party or intended third-party beneficiary, neither Ecovacs nor Defendant obtained Plaintiff's consent to modify the ZC Policy or the additional insured endorsement ("AI Endorsement") to convert the ZC Policy from an occurrence policy to a claims-made policy. *Id*. at ¶ 13. Plaintiff alleges that Defendant has denied coverage for claims filed against Plaintiff in Oregon, Wisconsin, New York, Georgia, Maine, and Texas, based on property damage that allegedly occurred during the ZC Policy term. *Id*. at ¶¶ 9-11, 15, 16, 25.

On July 27, 2020, Plaintiff filed a complaint against Defendant in Multnomah County Circuit Court alleging breach of insurance contract, seeking damages and a declaration that "the

PAGE 3 – OPINION AND ORDER

2019 ZC Policy renewal and sunset clause [are] null and void as to [Plaintiff], obligating [Defendant] to defend [Plaintiff] from claims based on occurrences during the policy period . . . ." ECF 1-1 at 1, 8-9. Plaintiff seeks performance of Defendant's alleged defense obligations in Oregon, Wisconsin, New York, Georgia, Maine, and Texas. ECF 1-1 at ¶¶ 9-11, 15, 16, 25. On October 14, 2020, Defendant removed the action to this Court on the basis of diversity jurisdiction. ECF 1 at ¶¶ 8-10. On October 20, 2020, Defendant filed its Motion to Dismiss. ECF 6.

## LEGAL STANDARDS

Defendant moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(3), arguing that the forum selection provision in the ZC Policy dictates that disputes arising from the ZC Policy must be brought before the Shanghai arbitration committee or a Chinese court.

Although the Ninth Circuit had previously held that motions to dismiss based on a forum selection clause are properly construed as Rule 12(b)(3) motions to dismiss for improper venue, *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996), the United States Supreme Court has since instructed that whether a forum selection clause warrants dismissal is properly analyzed under the doctrine of *forum non conveniens*. *See Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55-56, 60-61 (2013). The Supreme Court explained that a Rule 12(b)(3) motion permits dismissal only where venue is "wrong" or "improper," which depends on federal venue laws and is unrelated to the existence of a forum selection clause in a contract. *Atlantic Marine*, 571 U.S. at 55-57. "Instead, forum selection clauses should be analyzed under the federal transfer statute, 28 U.S.C. 1404(a), unless the moving party seeks a non-federal forum, in which case *forum non conveniens* is the appropriate doctrinal analysis." *Milliner v. Bock Evans Fin. Couns., Ltd.*, 114 F. Supp. 3d 871, 876 (N.D. Cal. 2015) (citation

PAGE 4 – OPINION AND ORDER

omitted). Because the moving party seeks a non-federal forum, this Court assesses the effect of the forum selection clause under the *forum non conveniens* analysis. *See, e.g., Martinez v. Bloomberg LP*, 740 F.3d 211, 216-17 (2d Cir. 2014) (stating that the legal question—whether to dismiss a case based on a forum selection clause—and materials the district court may rely on are the same under Rule 12(b)(3) and *forum non conveniens*).

In applying the *forum non conveniens* analysis, the "practical result is that forum-selection clauses should control except in unusual cases." *Atlantic Marine*, 571 U.S. at 64. "Unlike the situation where there is no forum-selection clause, the plaintiff 'must bear the burden of showing why the court should not transfer [or dismiss] the case to the forum to which the parties agreed.'" *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087 (9th Cir. 2018) (quoting *Atlantic Marine*, 571 U.S. at 64). "The plaintiff's subsequent choice of forum merits no weight." *Id*. (citation omitted). Additionally, "a court must deem all factors relating to the private interests of the parties (such as the 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive') as weighing 'entirely in favor of the preselected forum.'" *Id*. at 1087-88 (quoting *Atlantic Marine*, 571 U.S. at 64, 62 n.6). "While a court may consider factors relating to the public interest (such as 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law,' those factors will rarely defeat a transfer motion." *Id*. at 1088 (internal citations omitted) (alteration in original).

PAGE 5 – OPINION AND ORDER

In sum, "only under extraordinary circumstances unrelated to the convenience of the parties should a motion to enforce a forum-selection clause be denied." *Id*. (alteration omitted) (quotation marks and citation omitted). In evaluating such "extraordinary circumstances" or "exceptional reasons," courts consider the Supreme Court's "prior guidance on this issue" in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ("*Bremen*"). *Yei A. Sun*, 901 F.3d at 1088. Forum selection clauses may be held unenforceable under federal law if the litigant makes "a strong showing" that (1) its inclusion in a contract was the product of fraud or overreaching, (2) enforcement would contravene a strong public policy of the forum in which suit is brought, or (3) trial in the contractual forum will be so gravely difficult and inconvenient that the litigant will for all practical purposes be deprived of his day in court. *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 915 (9th Cir. 2019) (discussing *Bremen* factors). Nevertheless, a "forum selection clause is presumptively valid; the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which we will conclude the clause is unenforceable." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) (quoting *Bremen*, 407 U.S. at 17. Additionally, a party may overcome the presumption that an arbitration clause is valid and enforceable by raising "generally applicable [state law] contract defenses, such as fraud, duress, or unconscionability." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1268, 1287-88 (9th Cir. 2006).

In a diversity case, questions of interpretation as to the scope of arbitration and forum selection clauses are governed by the same federal law analysis, because "an agreement to arbitrate is actually a specialized forum selection clause." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513-514 & n.4 (9th Cir. 1988).

**DISCUSSION**

Plaintiff argues that (1) the forum selection provisions are illegal because the Oregon Supreme Court has held them unenforceable as violative of the right to trial by jury, and (2) the clauses' ambiguity and narrow scope permit resolution in Oregon. ECF 23 at 8-17; ECF 29 at 6. Notably, Plaintiff does not raise any generally applicable contract defenses such as fraud, duress, or unconscionability. Plaintiff also does not suggest that the forum selection clauses' inclusion was the product of fraud or overreaching. Plaintiff briefly argues that requiring it to litigate in China "would effectively render the purported coverage illusory" because that "would create an insurmountable challenge for most insureds." ECF 23 at 17. Plaintiff also suggests that Oregon has a stronger connection to this litigation than China. ECF 29 at 4-5. The Court considers Plaintiff's arguments in turn. *Cf. Yei A. Sun*, 901 F.3d at 1088 (noting that party did not argue the first *Bremen* ground, fraud or overreaching, so "only the latter two exceptions are at issue").

**A. Oregon Law Does Not Render the ZC Policy's Forum Selection Provisions Unenforceable**

Plaintiff argues broadly that mandatory and binding venue and arbitration provisions in insurance contracts violate the policyholder's right to a trial by jury under Article 1, Section 17 of the Oregon Constitution, and are therefore illegal. ECF 23 at 9-11. Under *Bremen*, if a litigant makes a strong showing that enforcement of the forum selection clause would contravene a strong public policy of the forum in which suit is brought, a court may not enforce it. *Gemini Techs.*, 931 F.3d at 915. However, Plaintiff's argument is based on an Oregon Supreme Court opinion, *Molodyh v. Truck Ins. Exch.*, 304 Or. 290 (1987), which does not apply to this case.

*Molodyh* is inapplicable because that opinion does not prohibit binding forum selection clauses in insurance policies generally, but rather prohibits arbitration by "statutory compulsion." *Carrier v. Hicks*, 316 Or. 341, 352 (1993) (en banc) (explaining that "the *statute* could not

PAGE 7 – OPINION AND ORDER

deprive" the party that did not choose to invoke the statutorily mandated appraisal process "of the right to jury trial") (emphasis added); *see also Hoeft v. Rain & Hail, LLC*, No. CIV. 01-581-AS, 2001 WL 34039497, at *2 (D. Or. Oct. 31, 2001) ("*Molodyh* stands for the proposition that a statute which mandates the inclusion of a[n] alternative remedy provision in all policies issued within the state will violate a plaintiff's constitutional right to a jury trial if the plaintiff is forced to pursue the alternative remedy and where the award is binding on the plaintiff."). In *Molodyh*, the court determined that O.R.S. § 742.232, a mandatory appraisal provision required by the Oregon Insurance Code to be inserted into all fire insurance policies, violated the right to a trial by jury under Article I, section 17 of the Oregon Constitution.[2] *Molodyh*, 304 Or. at 292-93. The court explained that, given the statutory mandate, if a plaintiff "wanted . . . insurance, he had to take it on the terms dictated by the legislature. The legislature cannot itself 'waive' plaintiff's right to a jury trial by requiring the inclusion of such provisions in insurance policies." *Id*. at 295. The court then construed the required statutory language to be "non-binding in respect of the non-demanding party" to save its constitutionality. *Id*. at 299.

Oregon courts have recognized that *Molodyh* "stands for a [ ] limited proposition": that "when the legislature has made a factual issue part of a claim that is subject to [Oregon's constitutional jury trial right], the legislature may not assign that factual issue to any entity other than a jury." *Horton v. Oregon Health & Sci. Univ.*, 359 Or. 168, 247 (2016); *see also Hoeft*, 2001 WL 34039497, at *3-4 (finding *Molodyh* applicable because *federal law required* the arbitration language included in crop insurance policy at issue, and then finding *Molodyh* preempted by federal law).

---

[2] Article I, section 17, of the Oregon Constitution guarantees a jury trial "in those classes of cases in which the right [to a jury trial] was customary at the time the [Oregon] [C]onstitution was adopted or in cases of like nature." *Molodyh*, 304 Or. at 295.

Here, Plaintiff does not contend that the forum selection provisions in the ZC Policy were included due to statutory compulsion. Parties may voluntarily agree to forego a jury trial. *See, e.g.*, *Carrier*, 316 Or. at 352; *Anderson v. Washington Mut. Bank*, No. 10-6113TC, 2010 WL 4827500, at *3 (D. Or. Oct. 25, 2010), report and recommendation adopted, No. CIV. 10-6113-TC, 2010 WL 4827115 (D. Or. Nov. 17, 2010) (rejecting argument in employment discrimination action that agreement "strips [plaintiff] of her right to a jury trial" because she "voluntarily waived her right to a jury trial when she signed the Agreement"); *Tech. Sec. Integration, Inc. v. Philadelphia Indem. Ins. Co.*, No. 3:14-CV-01895-SB, 2015 WL 4603893, at *7 (D. Or. July 30, 2015), aff'd, 710 F. App'x 753 (9th Cir. 2018) (explaining in action against liability insurer that, despite *Molodyh*, "Oregon courts have [ ] compelled arbitration pursuant to arbitration agreements in insurance contracts" and that if Oregon law applied, "Defendant should prevail on its motion to compel arbitration").[3] Because Plaintiff has not argued or demonstrated that any legislature had mandated the inclusion of the ZC Policy's forum selection language, Plaintiff's right to a jury trial under the Oregon Constitution has not been violated within the meaning of *Molodyh*.

Plaintiff states that "as recently as January 14, 2020, Oregon's Department of Consumer and Business Services Division of Financial Regulation ('DFR') issued a bulletin to all insurers

---

[3] The ZC Policy is a general liability insurance policy, not a fire insurance policy. *See* ECF 1-1 at ¶ 5 ("The ZC Policy is an occurrence policy that provides defense and indemnity coverage for property damage . . ."); ECF 1-1 at 11 (ZC Policy labeled "Commercial General Liability Policy"). "Fire insurance" for purposes of the Oregon Insurance Code constitutes insurance for direct losses to property, not for indemnity and defense with respect to third persons. *See, e.g.,* O.R.S. § 742.206; O.R.S. § 742.216; O.R.S. § 742.230; *cf. Brockway v. Allstate Prop. & Cas. Ins*. Co., 284 Or. App. 83, 87 n.1 (2017) (noting that Oregon courts construe the Code's fire insurance provisions as also applying to homeowner's insurance policies). As such, the Oregon Insurance Code does not require the language of O.R.S. § 742.232 to be included in the ZC Policy.

PAGE 9 – OPINION AND ORDER

reiterating this holding [*Molodyh*], and further indicating, 'with regards to pre-dispute mandatory arbitration clauses, choice of law provisions, and choice of venue provisions in insurance policies . . . [t]hese provisions are prohibited in all lines of insurance." ECF 23 at 10 (citing Hutchinson Decl., ECF 26 at ¶ 7, Ex. N) (alterations in original). However, this bulletin was not submitted as part of the record to this Court. *See* ECF 26 at ¶ 8 (discussing Exhibit N), 273-74 (exhibits ending with Exhibit M). Moreover, a state agency bulletin is not binding authority on this Court. Under *Bremen*, "the plaintiff must point to a statute or judicial decision that clearly states" the forum's strong public policy. *Yei A. Sun*, 901 F.3d at 1090, 1088 (citation omitted). Plaintiff does not cite any judicial opinion besides *Molodyh* nor any potentially applicable statutory provision in support of its broad proposition of illegality under Oregon law. *See* ECF 23 at 9-11. Accordingly, Plaintiff has not met its heavy burden of demonstrating that the forum selection provisions are unenforceable.

   1. **Other *Bremen* factors or state law contract defenses**

Plaintiff briefly mentions that requiring it to litigate in China "would create an insurmountable challenge for most insureds, due to the inherent burden and expense of international litigation." ECF 23 at 17. Plaintiff states that "an insured such as Plaintiff would likely find that litigation in China is not worth the trouble and defend itself against claims instead, despite the coverage." *Id.*; *see also* ECF 35 at 19-20.

Under *Bremen*, a forum selection clause may not be enforced if a litigant makes a strong showing that "trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court." *Yei A. Sun*, 901 F.3d at 1091 (citation and quotation marks omitted) (alterations in original). The Ninth Circuit has recognized that this exception is "difficult to satisfy." *Id*. Notably, "[w]here the parties have

PAGE 10 – OPINION AND ORDER

agreed to a forum-selection clause, they 'waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.'" *Id*. at 1091 (quoting *Atlantic Marine*, 571 U.S. at 64). Here, Plaintiff has failed to satisfy its heavy burden of establishing that litigating in the venues agreed to under the ZC Policy's dispute resolution provisions creates an "insurmountable challenge" under *Bremen*.[4]

Plaintiff does not raise the enforceability arguments of fraud, unconscionability, duress, or overreaching. As for the *forum non conveniens* public interest factors, Plaintiff argues in its choice-of-law discussion that Oregon "has a more relevant connection to the subject matter of the contract than China," because the subject matter of the contract and place of performance are in Oregon. ECF 29 at 4-5. "While a court may consider factors relating to the public interest (such as 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law,' those factors will rarely defeat a transfer [or dismissal] motion." *Yei A. Sun*, 901 F.3d at 1087-88 (internal citations omitted).

Plaintiff has arguably identified a "local interest" in resolving this dispute in Oregon. Nevertheless, this interest alone "does not outweigh all the private interest factors presumed to be in favor of the [other] forum and the controlling weight already given to the forum selection clause." *Rowen v. Soundview Commc'ns, Inc.*, No. 14-CV-05530-WHO, 2015 WL 899294, at *7

---

[4] Prior to *Atlantic Marine*, the Ninth Circuit had refused to enforce a forum selection clause when "a plaintiff 'provided specific evidence sufficient to demonstrate that he would be wholly foreclosed from litigating his claims against [defendants] in a Saudi forum,' because he 'lacked the resources to litigate in Saudi Arabia' and was afraid 'about returning to Saudi Arabia.'" *Yei A. Sun*, 901 F.3d at 1091 n.9 (quoting *Petersen v. Boeing Co*., 715 F.3d 276, 281 (9th Cir. 2013)). In late 2018 the Ninth Circuit declined to address whether "claimed obstacles to litigating in the contractually selected forum survive *Atlantic Marine*." *Id*. Here, Plaintiff's conclusory assertions, without support, do not rise to even the pre-*Atlantic Marine* standard of specific evidence demonstrating impossibility as a practical matter.

(N.D. Cal. Mar. 2, 2015) (citing *Atlantic Marine*, 571 U.S. at 63-67). Additionally, as explained above, "the plaintiff's choice of forum generally merits no weight in this context." *Id*. (citation omitted). The Court notes that Plaintiff is a citizen of Florida and Texas, ECF 1 at ¶¶ 4-5, and seeks in this action performance by Defendant in Oregon, Wisconsin, Georgia, Maine, Texas, and New York. ECF 1-1 at ¶¶ 9-11, 15, 16, 25. Defendant, a Chinese company that entered into this insurance policy with another Chinese company in China, has an interest as well. *See Rowen*, 2015 WL 899294, at *7. Given this context, Plaintiff's "interest in having this dispute settled" in Oregon "does not make this an 'exceptional case' that defeats application of a valid forum selection clause." *Id*. Accordingly, this Court finds that Plaintiff has not met its burden of showing the forum selection provision is unenforceable.

B.  **Forum Selection Provision Is Not Ambiguous**

Having established that the forum selection provisions are valid, this Court now addresses Plaintiff's interpretive arguments. Plaintiff argues that the provisions are ambiguous for various reasons and permit resolution in Oregon. ECF 23 at 11-17. However, Plaintiff's arguments isolate phrases out of context and are not persuasive.

In interpreting forum selection clauses, including arbitration clauses, courts apply federal law. *AOL LLC*, 552 F.3d at 1081 (citing *Manetti-Farrow*, 858 F.2d at 513). "When we interpret a contract under federal law, we look for guidance 'to general principles for interpreting contracts.'" *Id*. (quoting *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999)). These principles include the following:

> Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. Whenever possible, the plain language of the contract should be considered first. We apply the primary rule of interpretation ... that the common or normal meaning of language will be given to the words of a contract unless circumstances show that in a particular case a special meaning should be attached to it. We read a written contract as a whole, and

> interpret each part with reference to the whole. That the parties dispute a contract's meaning does not render the contract ambiguous; a contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation.

*Doe 1*, 552 F.3d at 1081 (internal citations and quotation marks omitted). If there is an ambiguity in the forum selection clause, courts construe it against the drafter. *Id*. at 1082 n.10.

### 1. The Forum Selection Clauses Are Broad Enough to Reach Plaintiff's Claims

The arbitration and venue clauses in the forum selection paragraph contain the language "disputes arising from performance." Accordingly, Plaintiff argues that because its claims "arise out of [Defendant's] invalid, retroactive modification of the insurance contract to exclude coverage" and Defendant's "non-performance of the defense obligations in the policy," the claims do not "arise from the performance" of the contract. ECF 23 at 13. Plaintiff's claims are for breach of contract and for a declaratory judgment that "the 2019 ZC Policy renewal and sunset clause [are] null and void as to [Plaintiff], obligating [Defendant] to defend [Plaintiff] from claims based on occurrences during the policy period . . . ." ECF 1-1 at 7, 9.

"The standard for determining whether a forum selection clause applies depends on the breadth of its language." *Mil-Ray v. EVP Int'l, LLC*, No. 3:19-CV-00944-YY, 2020 WL 3317931, at *12 (D. Or. Mar. 17, 2020), report and recommendation adopted, No. 3:19-CV-00944-YY, 2020 WL 3316979 (D. Or. June 18, 2020). The Ninth Circuit has held that "forum-selection clauses covering disputes 'arising out of' a particular agreement apply only to disputes 'relating to the interpretation and performance of the contract itself." *Yei A. Sun*, 901 F.3d at 1086; *see also Mediterranean Enterprises*, 708 F.2d at 1464 (citing with approval cases that held these narrow clauses referencing the contract cover only "disputes and controversies relating to the interpretation of the contract and matters of performance"). In contrast, broader forum selection clauses covering disputes "relating to" an agreement "apply to any disputes that

PAGE 13 – OPINION AND ORDER

reference the agreement or have some logical or causal connection to the agreement." *Yei A. Sun*, 901 F.3d at 1086 (citation and quotation marks omitted).

Here, the arbitration and venue clauses use the phrase "arising from *performance*," rather than arising from the *contract*. Accordingly, the arbitration and venue clauses are narrower than clauses covering disputes arising from the contract. See *PennyMac Loan Servs., LLC v. Black Knight, Inc.*, No. 2:19-cv-09526-RGK-JEM, 2020 WL 5985492, at *5 (C.D. Cal. Feb. 13, 2020) (interpreting *Yei A. Sun*). Plaintiff argues that "arising from performance" does not encompass Plaintiff's claims for breach and for a declaratory judgment stating that Defendant is obligated to perform. ECF 23 at 14. But Plaintiff's claims concern matters of performance and accordingly fall within the scope of "disputes arising from performance." Federal courts considering similar language have concluded that claims concerning breach do arise from performance. *See, e.g., U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*, No. 98 CIV 3099 JGK, 2001 WL 300735, at *19 (S.D.N.Y. Mar. 27, 2001) (finding forum selection clause covering "any questions arising from the performance" of the contracts to include claims of breach because they "concern[] [the litigant's] rights and duties with respect to performance under those contracts" or "will relate to the interpretation" of the contracts); *Rivard Graphics Supply & Equip., Inc. v. Hull Printing Co.*, 994 F. Supp. 118, 120 (D. Conn. 1998) (finding that arbitration clause covering claims "arising out of or relating to the performance" included claim for breach because "the facts underlying" plaintiff's claims "involve issues of performance," and "those claims must be arbitrated, whatever the legal labels attached to them") (citation and quotation marks omitted); *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 604-05 (S.D.N.Y. 2010), amended on reconsideration (Mar. 23, 2010) (finding forum selection clause covering disputes "with respect to the performance and/or interpretations of this

PAGE 14 – OPINION AND ORDER

contract" applicable because "[a]ny action for indemnification based on [indemnifier's] performance of the contract falls within the scope of the clause"); *In re Util. Oil Corp.*, 69 F.2d 524, 525-26 (2d Cir. 1934) (finding arbitration clause covering disputes "arising during performance" to encompass "any dispute which arose after performance began," even after "performance on both sides had terminated"); *cf. Manetti-Farrow*, 858 F.2d at 511 n.1, 513-14 & n.4 (finding that forum selection clause covering controversies "regarding interpretation or fulfillment" of the contract included tort claims because they required "analyzing whether the parties were in compliance with the contract"; noting that plaintiff had conceded its breach claims "involve interpretation or fulfillment"; not suggesting that only a term such as "non-fulfillment" would cover a claim for breach). Here, Plaintiff's claims concern the parties' rights and duties with respect to performance. Accordingly, Plaintiff's claims fall within the scope of the ZC Policy's narrow forum selection clauses.

This conclusion finds further support in the context surrounding the isolated phrases that Plaintiff focuses on. The forum selection paragraph is titled "Contractual Dispute Resolution," and the primary language states, "Contractual disputes shall be resolved in one of the following methods." ECF 1-1 at 28. Those "methods" are either submitting the dispute to the "Shanghai arbitration committee for arbitration" or bringing "litigation proceedings in people's court." *Id*. Only those arbitration and venue clauses contain the phrase "disputes arising from performance." *Id*. Considering the forum selection paragraph's full context, Plaintiff's argument that the paragraph does not cover questions of rights and duties with respect to performance is unpersuasive. Removing both claims of breach and interpretation matters from the clause's scope, as Plaintiff's argument requires, would give the phrase "contractual dispute" an arguably

PAGE 15 – OPINION AND ORDER

nonsensical, and clearly unintended, effect. No other "contractual dispute resolution" procedures are included in the contract to address any of these core contractual dispute topics.

This Court finds that the full context of the contractual dispute resolution paragraph, as well as the plain language of the "arising from performance" phrase itself, unambiguously demonstrate that the parties' intent was that this forum selection paragraph cover rights and duties with respect to performance.

### 2. The Term "People's Court" Is Not Ambiguous

The venue clause provides that the parties "may bring up litigation proceedings in people's court." ECF 1-1 at 28. Plaintiff argues that it interprets "people's court" as meaning any court of competent jurisdiction, including in the United States, and that this Court should construe the ambiguous term against the drafter and find the same. Defendant argues that the phrase "people's court" is an English translation of a Chinese term that denotes "a court in the People's Republic of China." ECF 27 at 8. Considering the term in context and with reference to the rest of the contract, this phrase is not ambiguous and only refers to a court in the People's Republic of China.

This is an insurance policy providing for indemnity and defense. In explaining the contract's jurisdiction for product and completed operation insurance, the contract provides that the policy "shall apply in respect of judgments which are in the first instance delivered by or obtained from any court of a competent jurisdiction" within countries "worldwide, including USA-Canada." ECF 1-1 at 33. Elsewhere, the policy discusses eventualities that come up in the duty to defend context and uses the word "court" without a modifier. *See, e.g., id*. at 23, 35 (describing duty to pay judgments "deposited in court" and "court costs"). In contrast, the Contractual Dispute Resolution paragraph provides that contractual disputes shall be resolved in

PAGE 16 – OPINION AND ORDER

either "Shanghai arbitration" or "in people's court." ECF 1-1 at 28. Based on this context, it is clear that when the policy intends a provision to be broadly applicable to "any court of competent jurisdiction," the policy says so. Additionally, the venue and arbitration clauses refer to, respectively, "people's court" and arbitration in Shanghai. Given this context, it is implausible to interpret the phrase "people's court" in the Contractual Dispute Resolution paragraph to mean any court of competent jurisdiction, including one in the United States. The term and paragraph are not ambiguous.

   3. **Condition Precedent**

Lastly, Plaintiff argues that the contract language "[c]ontractual disputes shall be resolved in one of the following methods determined by the parties in the contract" creates a condition precedent. Plaintiff argues that since "there was no agreement, that condition precedent failed, and neither method applies." ECF 23 at 12. Plaintiff provides a dictionary definition of the word "determine," noting that Merriam-Webster defines it as "to settle or decide by choice of alternatives or possibilities." ECF 23 at 12 (citation omitted).

In this Circuit, conditions precedent are disfavored and a court will not construe contract terms as conditions "unless required to do so by plain, unambiguous language." *Southland Corp. v. Emerald Oil Co.*, 789 F.2d 1441, 1444 (9th Cir. 1986) (quotation marks and citations omitted). The word "determine" does not plainly and unambiguously require that this sentence be construed as a condition precedent. Nor does that sentence include "terms usually associated with conditions precedent, such as 'if,' 'on condition that' or 'provided.'" *Vogt-Nem, Inc. v. M/V Tramper*, 263 F. Supp. 2d 1226, 1232 (N.D. Cal. 2002) (finding no condition precedent where forum selection clause was preceded by language stating that "any dispute . . . will be settled first amicably, but in case of disagreement" it will be determined elsewhere) (quoting J. Calamari,

Contracts § 142 (1970)). Indeed, Plaintiff provides no case law where any court has held that the word "determine," located before two alternative options in a contract, created a condition precedent that could render both those options inapplicable. The Court declines to construe "determine" as a condition precedent in this case.

**C. Dismissal with Prejudice**

Defendant seeks dismissal with prejudice. ECF 6 at 10. The trial court "may deny leave to amend due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (quotation marks and citations omitted) (alteration in original). This Court finds that amendment to the Complaint would be futile because Plaintiff's claims are subject to the forum selection provisions as explained in this decision. *See Finsa Portafolios, S.A. DE C.V. v. OpenGate Cap.*, LLC, 769 F. App'x 429, 431-32 (9th Cir. 2019) (affirming dismissal without leave to amend because "Finsa has presented no compelling argument that its amended complaint would not have been subject to the forum-selection clauses. Thus, the amended complaint would have been subject to dismissal under the same *forum non conveniens* analysis as the initial complaint.").

There are no facts to suggest the forum selection clauses were procured by fraud or overreaching or are otherwise unenforceable, nor are there facts to suggest that Shanghai arbitration and Chinese court would be inadequate and unavailable forums. As to the first *Bremen* factor, "[t]o establish the invalidity of a forum selection clause on the basis of fraud or overreaching, the party resisting enforcement must show that the *inclusion of that clause in the contract* was the product of fraud or coercion." *Petersen v. Boeing Co.*, 715 F.3d 276, 282 (9th

Cir. 2013) (quoting *Richards v. Lloyd's of London*, 135 F.3d 1289, 1297 (9th Cir. 1998)) (emphasis in original) (quotation marks omitted). Here, Plaintiff engaged a Chinese manufacturer, Ecovacs, to manufacture its Eyevac product. ECF 24 at ¶ 3. "As part of that manufacturing deal, [Plaintiff] required Ecovacs to add [Plaintiff] as an additional assured on its insurance policy" for the "purpose of ensuring [Plaintiff] would have both defense and indemnity coverage . . . ." *Id*. The presence or absence of any forum selection provisions was not relied upon or misrepresented; indeed, it does not appear that Plaintiff was concerned at all with the possibility of a forum selection clause in an insurance policy between two Chinese companies when entering its manufacturing agreement with Ecovacs. Plaintiff received a copy of the certificate of insurance confirming that it was an additional insured but not the policy itself. *Id*. However, this did not concern Plaintiff for another couple years: Plaintiff accepted Defendant's defense and indemnity coverage for more than fifteen fire claims from 2017 onward. *See, e.g. id*. at ¶¶ 3-6. Plaintiff's allegations of misbehavior focus on Defendant's actions in 2019 and 2020, surrounding the renewal and alleged sunset clause insertion. *See, e.g. id*.; ECF 25 at ¶¶ 3-10. As for the third *Bremen* factor, Plaintiff's concerns about the ZC Policy's chosen Chinese forums are merely convenience and policy arguments. *See, e.g*., ECF 23 at 17; ECF 35 at 19-20. Based on the facts presented, this Court concludes that a new complaint would be dismissed pursuant to the same *forum non conveniens* analysis discussed above.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Improper Venue, ECF 6, is GRANTED. This case is dismissed with prejudice.

**IT IS SO ORDERED**.

DATED this 9th day of April, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge
